UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARCO ANTONIO RAMOS FUNEZ,

                              Petitioner,

          -vs-

JEFFERSON B. SESSIONS, Attorney
General of the United States; CARMEN
WHALING, Field Office Director for
Detention and Removal, Buffalo Field
Office, Bureau of Immigration and
Customs Enforcement; DEPARTMENT OF
HOMELAND SECURITY; and EDWARD NEWMAN,
Assistant Field Office Director,
Buffalo Federal Detention Facility

                              Respondents.

**No. 6:18-cv-06413-MAT**
**DECISION AND ORDER**

## I.    Introduction

Proceeding pro se, Marco Antonio Ramos Funez ("Ramos Funez" or

"Petitioner") commenced this habeas proceeding on February 12,

2018, pursuant to 28 U.S.C. § 2241 ("Section 2241") against the

respondents (hereinafter, "the Government")[1] challenging his

continued detention in the custody of the United States Department

of Homeland Security ("DHS"), Immigration and Customs Enforcement

("ICE"). For the reasons discussed below, the request for a writ of

habeas corpus is denied, and the Petition (Docket No. 1) is

dismissed without prejudice.

---

[1]
        Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Attorney
General William P. Barr is automatically substituted for former Attorney General
Jefferson B. Sessions.

## II.  Factual Background and Procedural History

Ramos Funez, a native and citizen of Honduras, initially entered the United States on or about December 12, 1970, when he was an infant; his status was that of a lawful permanent resident. On or about September 4, 2007, he was paroled into the United States at or near Miami, Florida, as a returning lawful permanent resident.

Ramos Funez has several criminal convictions which he incurred in 2005 (Sexual Abuse in the Second Degree (New York Penal Law ("PL") § 130.60(2)), 2012 (Attempted Conspiracy in the Fourth Degree (PL §§ 110.00/105.10(1)), and 2015 (Grand Larceny in the Second Degree (PL § 155.40(1)). He was placed in immigration removal proceedings by a Notice to Appear ("NTA"), dated July 29, 2010, which was served on him on April 17, 2012.[2] The NTA charged

---

[2] Congress has conferred upon immigration judges the authority to conduct removal proceedings under INA § 240, 8 U.S.C. § 1229a. See INA § 101(b)(4), 8 U.S.C. § 1101(b)(4); see also INA § 240(a)(1), 8 U.S.C. § 1229a(a)(1). "The regulations governing initiation of these removal proceedings provide that '[e]very removal proceeding conducted under [§ 1229a] . . . is commenced by the filing of a notice to appear with the immigration court.'" Reyes-Almendarez v. U.S. Atty. Gen., 593 F. App'x 929, 936 (11th Cir. 2014) (unpublished opn.) (quoting 8 C.F.R. § 1239.1(a); ellipsis in original). "In addition, the rules of procedure for immigration courts state that '[j]urisdiction vests, and proceedings before an [IJ] commence, when a charging document is filed with the Immigration Court by [DHS].'" Id. (quoting 8 C.F.R. § 1003.14(a) (located within a subpart entitled "Immigration Court—Rules of Procedure"); alterations in original). The rules further state that "'[t]he charging document must include a certificate showing service on the opposing party pursuant to § 1003.325 which indicates the Immigration Court in which the charging document is filed.'" Id. (quoting 8 C.F.R. § 1003.14(a); citing 8 C.F.R.§ 1003.13 (defining "charging document" to include a NTA and "filing" as the "actual receipt of a document by the appropriate Immigration Court")); see also id. n.5 ("Section 1003.32(a) requires '[a] certification showing service . . . on a date certain [to] accompany any filing with the [IJ] unless service is made on the record during the hearing.'") (quoting 8 C.F.R. § 1003.32(a); alterations and ellipsis in original). Here, it is unclear when the NTA was filed with the immigration court. The copy of the NTA submitted by the Government contains a stamp reading,

him, pursuant to Immigration and Nationality Act ("INA") 212(a)(2)(A)(i)(I), 8 U.S.C. 1182(a)(2)(A)(i), as an arriving alien who had been convicted of a crime of moral turpitude.

On or about January 15, 2011, Ramos Funez submitted an Application for Certificate of Citizenship (N-600) to U.S. Citizenship and Immigration Services ("USCIS") which was denied by USCIS on January 30, 2012. During its investigation, USCIS determined that Ramos Funez did not qualify for benefits under INA § 320 because he was over 18 years-old on February 27, 2001, the date the law took effect.[3] USCIS further determined that Ramos

_____

"Exhibit #1 Jun 22, 2012 Margaret R. Reichenberg, Immigration Judge." Docket No. 8-2, p. 28 of 62. Given that proof of service must accompany filing of the NTA unless service is made in immigration court (which was not the case here), the Court finds that removal proceedings could not have commenced prior to April 17, 2012, the date on which Ramos Funez acknowledged service of the NTA.

[3]    USCIS was referring to the Child Citizenship Act of 2000 ("CCA"), Pub. L. No. 106-395, 114 Stat. 1631, which "revised the manner in which children of non-citizens born outside the United States are eligible to become U.S. citizens." Gomez-Diaz v. Ashcroft, 324 F.3d 913, 915-16 (7th Cir. 2003). The CCA amended INA § 320 "to grant automatic United States citizenship to children who are born outside of the United States when all three of the following conditions have been fulfilled:

        (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.
        (2) The child is under the age of eighteen years.
        (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

Gomez-Diaz, 324 F.3d at 915-16 (quoting 8 U.S.C. § 1431(a)). "Section 104 of the new law provided that this amendment 'shall take effect 120 days after the date of the enactment of this Act and shall apply to individuals who satisfy the requirements of section 320 . . . of the Immigration and Nationality Act, as in effect on such effective date.'" Id. (quoting 2000 Acts. Pub.L. 106-395, Title I, § 104, Oct. 30, 2000, 114 Stat. 1633). Since the CCA was signed by President Clinton on October 30, 2000, the amendments to INA § 320 became effective on February 27, 2001. Id.

Funez did not qualify for benefits under former INA § 321[4] because the statute required that both parents be naturalized before an applicant turned 18 years-old, and only Ramos Funez's mother became a U.S. citizen before he reached age 18.

On January 7, 2013, an immigration judge ("IJ") administratively closed Ramos Funez's case because he was in state custody in Nassau County, New York pursuant to pending criminal charges.[5]

On August 31, 2016, DHS moved the immigration court to re-calendar Ramos Funez's removal proceedings and change venue to the Ulster Correctional Facility in Napanoch, New York, where he was incarcerated. A copy of this motion was served on Ramos Funez and his attorney, Peter Bark, Esq. Both motions were granted and Ramos Funez's immigration removal proceedings were re-opened on September 20, 2016.

Ramos Funez was served with Additional Charges of Inadmissibility/Deportability on January 11, 2017. In particular, he was charged with being subject to removal pursuant to INA

---

[4]     "This section was repealed by the Child Citizenship Act of 2000[,] § 103, Pub. L. 106-395, 114 Stat. 1631, 1632." Nwozuzu v. Holder, 726 F.3d 323, 325 n.1 (2d Cir. 2013).

[5]
Petitioner had been convicted by guilty plea of Attempted Conspiracy in the Fourth Degree (PL §§ 110.00/105.10(1)) on April 13, 2012, and was serving a one-year sentence. After his sentence was completed, he was arrested again and convicted following a jury trial, on January 7, 2015, of Grand Larceny in the Second Degree (PL § 155.40(1)). For this conviction, he received a sentence of two to six years' imprisonment. The conviction was affirmed on direct appeal by the Appellate Division, First Department, of New York State Supreme Court.

212(a)(2)(B), 8 U.S.C. 1182(a)(2)(B), as an alien who has been convicted of two or more offenses for which the aggregate sentences to confinement actually imposed were five years or more, in addition to the charge set forth in the original NTA.

Following a hearing on October 24, 2017, an IJ concluded that the immigration court lacked jurisdiction to set bond because Ramos Funez was classified as an arriving alien. He appealed the decision to the Board of Immigration Appeals ("BIA") which dismissed the appeal on March 12, 2018.

On April 13, 2018, an IJ determined that no good cause for a further continuance of the removal proceedings was demonstrated since Ramos Funez's claim of derivative citizenship was denied by USCIS and there was insufficient evidence that this initial denial was ever appealed. The IJ determined that Ramos Funez had withdrawn his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Finally, the IJ ordered Ramos Funez removed from the United States pursuant to INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an arriving alien who had been convicted of a crime of moral turpitude; and pursuant to INA § 212(a)(2)(B), 8 U.S.C. § 1182(a)(2)(B), as an alien who has been convicted of two or more offenses for which the aggregate sentences to confinement actually imposed were five years or more. See Docket No. 8-2, Exhibit ("Ex.") A, pp. 2-6.

Ramos Funez appealed the IJ's decision to the BIA, raising several grounds for reversal. By decision (Docket No. 16-2) dated December 7, 2018, the BIA dismissed Ramos Funez's claim that INA § 320 and former INA § 321, 8 U.S.C. §§ 1431, 1432,[6] governing the award of derivative citizenship, are unconstitutional because immigration judges do not have the authority to rule on the constitutionality of statutes. However, the BIA determined that the record must be remanded to immigration court so that the IJ could "complete a written decision in a manner that clearly separates it from the transcript of the proceedings." Docket No. 16-2, p. 2. The BIA noted while the IJ sustained the charges under INA § 212 based on Ramos Funez's "prior admissions," he did not render findings on what Ramos Funez actually admitted. Id. The IJ also failed to make factual findings to support his determination that Ramos Funez's motion to terminate the proceedings was untimely. In addition, although the IJ purported to deny Ramos Funez's motion to change

[6]     Former INA § 321(a), 8 U.S.C. § 1432(a) provided in pertinent part that

    [a] child born outside of the United States of alien parents . . .
    becomes a citizen of the United States upon fulfillment of the
    following conditions:
    (1) The naturalization of both parents; . . .
    . . . and if
    (4) Such naturalization takes place while such child is under the
    age of eighteen years; and
    (5) Such child is residing in the United States  pursuant to a
    lawful admission for permanent residence at the time of the
    naturalization of the parent last naturalized ... or thereafter
    begins to reside permanently in the United States while under the
    age of eighteen years.

8 U.S.C. § 1432(a) (1994) (repealed 2000); see generally Nwozuzu v. Holder, 726 F.3d 323, 325 (2d Cir. 2013) (discussing legislative history). "This section was repealed by the Child Citizenship Act of 2000 § 103, Pub. L. 106-395, 114 Stat. 1631, 1632." Nwozuzu, 726 F.3d at 325 n.1.

venue for "the reasons as set forth . . . previously in the court file," the colloquy between the parties and the IJ was insufficient to provide the necessary findings of fact and legal analysis to permit appellate review. Id. (citation omitted). In the absence of a complete written decision, the BIA declined to address the remaining appellate arguments raised by Ramos Funez. The BIA remanded the record to the IJ for further proceedings, including the issuance of a complete written decision.

During the pendency of his appeal to the BIA, Ramos Funez filed the instant habeas petition asserting that DHS's detention of him under 8 U.S.C. § 1231(a)(6) is "illegal/unlawful because he is a derivative citizen of the United States." Petition (Docket No. 1) ("Pet.") ¶ 29; see also id. ¶¶ 28-68. Ramos Funez asserts that he enjoys derivative United States citizenship through his mother's naturalization, which allegedly occurred when he was under 8 years-old. He contends that under the CCA, which amended INA §§ 320 and 332 and repealed INA § 321, he is qualified in all respects for derivative citizenship. Alternatively, he contends if the CCA is not applied to him, and his claim is analyzed under former INA § 321, the latter statute is unconstitutional as applied because it violates the Equal Protection Clause.

As his second claim for habeas relief, Ramos Funez asserts that, as "a derivative citizen of the United States, [he] was deprived of his right to due process when, on April 13, 2018,

during a merits hearing, the Assistant Chief Counsel ("ACC") [for DHS] refused to accept his Motion to Terminate which was partially based on his citizenship and a copy of his N-600[,]" on the grounds that it was untimely. Pet. ¶ 69. Ramos Funez asserts that the IJ erroneously agreed with the ACC and ordered Ramos Funez removed without any discussion on his citizenship or motion to terminate. By doing so, Ramos Funez argues, "the IJ failed to confer upon Petitioner his rights to due process and equal protection under the constitution." Pet. ¶ 69.

The Government filed a Motion to Dismiss (Docket No. 8) with Exhibits (Docket Nos. 8-1 to 8-3) and a Memorandum of Law (Docket No. 9) arguing that this Court lacks jurisdiction to consider Petitioner's claim of derivative citizenship and that, in any event, Petitioner is not a derivative U.S. citizen under the Child Citizenship Act of 2000 ("CCA"), which repealed 8 U.S.C. § 1432. The Government also contends that the weight of the precedent holds that former § INA is not unconstitutional.

Ramos Funez filed a Response (Docket No. 13), reasserting that this Court is the proper venue for deciding the issues raised by his Petition. He also alleges he was not served with a motion to reopen his immigration removal proceedings. Docket No. 13, p. 3. In addition, he asserts arguments regarding issues as to which the BIA determined that remand to the IJ was warranted for further proceedings, e.g., the IJ's failure to consider his motion to

terminate the proceedings and denial of his motion for a continuance to allow him to retain counsel. See Docket No. 13, pp. 4-9. Ramos Funez provides extensive argument regarding his derivative citizenship claim and his claims that former INA § 321 violates the Equal Protection Clause of the Fourteenth Amendment in that it "discriminates against mothers of otherwise qualified children when said mothers are married and made the choice to remain faithful to their marriage vows," the otherwise qualified children of such mothers, and the fathers of those children. Docket No. 13, pp. 9-28.

The Government filed a Reply (Docket No. 16) arguing that Petitioner cannot establish jurisdiction over his Petition under 28 U.S.C. § 2241 and that binding Second Circuit precedent holds that former INA § 321 is constitutional.

The Motion to Dismiss was submitted without oral argument. For the reasons discussed below, it is granted, and the Petition is dismissed without prejudice.

### III. Rule 12(b)(1) Standard

Rule 12(b)(1) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required[,]" "[b]ut a party may assert" the defense of lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1). In the context of such a motion, the party seeking to invoke the Court's jurisdiction bears the burden of proving that

subject matter jurisdiction exists. <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).

"In reviewing a facial attack to the court's jurisdiction, [the Court] draw[s] all facts—which [it] assume[s] to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and the exhibits attached thereto." <u>Amidax Trading Grp. v. S.W.I.F.T. SCRL</u>, 671 F.3d 140, 145 (2d Cir. 2011). To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the Court may consider evidence outside the pleadings. <u>Id.</u>

**IV. Discussion**

   **A.  Claim One of the Petition: Entitlement to Derivative Citizenship Under the CCA and Unconstitutionality of Former INA § 321**

   **1.  Overview of the Parties' Arguments**

Petitioner contends that he is entitled to bring an action for declaratory judgment under 8 U.S.C. § 1503(a) in this Court to litigate his claim of derivative citizenship, which is based on two theories: the current CCA, enacted on February 27, 2001, which amended INA §§ 320 and 322 and repealed INA § 321, applies to his claim and leads to a favorable result; and former INA § 321 is

unconstitutional as applied to his claim. The Government responds that the Court lacks subject matter jurisdiction under 8 U.S.C. § 1503(a) and that Petitioner's only judicial recourse regarding his citizenship claim is in the Second Circuit pursuant to 8 U.S.C. § 1252(b). In the alternative, the Government argues, Petitioner does not meet the criteria for derivative citizenship, and former INA § 321 is constitutional.

### 2. Citizenship Applications and the Availability of a Declaratory Judgment Action Under 8 U.S.C. § 1503(a)

In general, there are two routes by which a person may pursue a citizenship claim—defensively and affirmatively. Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 396-97 (5th Cir. 2007); see also Ortega v. Holder, 592 F.3d 738, 744 (7th Cir. 2010) ("[T]he language of [8 U.S.C.] § 1503(a)(1), read within the context of [8 U.S.C.] § 1503(a) and also read in conjunction with related provisions of Title 8, makes it clear that Congress intended individuals to pursue one of two routes to establish claims for nationality.").

First, if the person is in removal proceedings, he can claim citizenship as a defense. Rios-Valenzuela, 506 F.3d at 396-96. If the defense is unsuccessful, and the IJ orders removal, the immigrant can appeal the decision to the BIA. 8 C.F.R. § 1003.1(b). If the BIA denies the appeal, the person may bring a petition for review with the appropriate federal circuit court of appeals.

8 U.S.C. § 1252(a)(5). The circuit court of appeals can issue a decision on the citizenship claim or can transfer the case to a district court if there is a genuine issue of material fact as to the individual's nationality. 8 U.S.C. § 1252(b)(5). If, on the other hand, the IJ accepts the citizenship defense, the removal proceedings are terminated without deciding citizenship. Rios-Valenzuela, 506 F.3d at 396-97 & n.3 (citing Ng Fung Ho v. White, 259 U.S. 276, 284 (1922) ("Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact."); Chau v. INS, 247 F.3d 1026, 1027-28 (9th Cir. 2001)).

Second, a person can affirmatively seek a certificate of citizenship by filing with USCIS a Form N-600, Application for Citizenship. 8 U.S.C. § 1452(a); 8 C.F.R. § 341.1. If the application is denied, he can appeal to the Administrative Appeals Office ("AAO") under 8 C.F.R. §§ 341.6, 103.3(a). If the AAO affirms USCIS's denial, the person will be deemed to have exhausted his administrative remedies and may file an action for a declaratory judgment in a United States district court under 8 U.S.C. § 1503(a), which provides as follows:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of

-12-

section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, **except** that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, **or** (2) is in issue in any such removal proceeding.

8 U.S.C. § 1503(a) (emphasis supplied).

With regard to the first limitation on jurisdiction, which applies when the applicant's citizenship status "arose by reason of, or in connection with a removal proceeding[,]" 8 U.S.C. § 1503(a)(1), the court must look at "the context of how the particular issue of citizenship arose rather than the mere timing of events. . . ." Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007). If "a citizenship claim finds its genesis outside of the context of removal proceedings, the exception is no bar to jurisdiction[.]" Id. at 399 (footnote omitted). As an example, the Fifth Circuit explained, "once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in those removal proceedings." Id. (footnote omitted); see also id. at 398 (affirming district court's ruling that citizenship claim arose in connection with removal proceedings where petitioner did not file his N-600 application before the commencement of removal proceedings and, "[a]s a challenge to his removal, during those removal proceedings [the petitioner] claimed that he was a United States Citizen").

"The few courts that have dealt with . . . [the second limitation in] section [1503(a)(2)]" including the Second Circuit in an unpublished decision, "have given its language a natural and plain meaning: where a removal proceeding is pending, and citizenship is at issue, the district court cannot hear the matter." Anees v. Napolitano, 972 F. Supp.2d 140, 145-46 (D. Mass. 2013) (citing Wilks v. Farquharson, 450 F. App'x 1, 2-3 (2d Cir. 2011) (unpublished opn.); Seal v. Holder, No. C12-181-TSZ-BAT, 2012 WL 2881256, at *2 (W.D. Wash. May 31, 2012); Patino v. Chertoff, 595 F. Supp.2d 310, 313-14 (S.D.N.Y. 2009); Hutchinson v. Mukasey, No. 07CV-10716, 2007 WL 4323006, at *2-*3 (S.D.N.Y. Dec. 10, 2007)).

### 3. The Procedural History of Ramos Funez's Citizenship Claim

Originally, Ramos Funez proceeded the affirmative route insofar as he filed an N-600 with USCIS on January 15, 2011. This filing occurred after the commencement of his removal proceedings sometime on or after April 17, 2012. See supra, note 2. He argues that USCIS improperly denied his N-600 application and therefore he may bring an action for a declaratory judgment under 8 U.S.C. § 1503(a). Ramos Funez also asserted citizenship as a defense to removal. In particular, he argued in his Motion to Terminate removal proceedings that he was entitled to derivative citizenship.

The Government contends that Ramos Funez is not entitled to utilize 8 U.S.C. § 1503(a) because his claim of derivative

citizenship is "at issue in removal proceedings" that are currently pending. Docket No. 9, pp. 4-5 (citing United States v. Buscemi, 2004 U.S. Dist. LEXIS 27134 (W.D.N.Y. May 21, 2004); Henrieuz v. Ashcroft, 269 F. Supp.2d 106, 108 (E.D.N.Y. 2003); Omolo v. Gonzales, 452 F.3d 404, 406-07 (5th Cir. 2006); Iasu v. Chertoff, 426 F. Supp.2d 1124, 1127 (S.D. Cal. 2006)). The Government contends that any further legal challenge may only be brought in the Second Circuit pursuant to 8 U.S.C. § 1252(b)(2). Docket No. 16, p. 4.

### 4. Whether Jurisdiction Is Precluded Under 8 U.S.C. § 1503(a)(1) or (a)(2)

"The first jurisdictional exception, which prohibits a Section 1503(a) action where an individual's "status as a national of the United States . . . arose by reason of, or in connection with any removal proceeding,' applies to removal proceedings that have already concluded." Headley-Ombler v. Holder, 985 F. Supp.2d 379, 386 (E.D.N.Y. 2013) (quoting 8 U.S.C. § 1503(a)(1); citing Rios-Valenzuela, 506 F.3d at 398 ("If the exceptions [in Section 1503(a)] apply only while a removal proceeding is still pending, then the first exception would be superfluous since the second exception covers instances where the removal proceeding is still pending. The past tense 'arose' used in the first exception also indicates that this provision applies to concluded removal proceedings.") (quoting Said v. Eddy, 87 F. Supp.2d 937, 941 (D. Alaska 2000)). Here, Ramos Funez's removal proceeding is still

pending, and 8 U.S.C. § 1503(a)(1) does not operate, at this time, as a jurisdictional bar.

The Court turns next to the second restriction set forth in Section 1503(a)(2), which is intended to "prevent[ ] judicial interference with an on-going proceeding in an immigration court, and serves to preserve [8 U.S.C.] § 1252 as the exclusive route to appeal an unfavorable removal decision." Anees v. Napolitano, 972 F. Supp.2d 140, 145–46 (D. Mass. 2013) (citing Phuc Huu Nguyen v. USCIS, No. 1:CV-09-2211, 2010 WL 3521910, *3–5 (M.D. Pa. Aug. 31, 2010)).

In Wilks, the Second Circuit observed that "[b]y its plain language, § 1503(a)(2) bars a district court from reviewing an administrative decision denying a non-citizen's claim of citizenship if the question of that person's nationality is 'in issue' in a pending removal proceeding." Wilks, 450 F. App'x at 3. The petitioner in Wilks filed his complaint seeking declaratory relief in district court during the pendency of his removal proceeding in immigration court. "[B]ecause he challenged his removal on the basis that he was a United States citizen, his status as a United States national was clearly 'in issue' in his removal proceedings." Id. The Second Circuit concluded that 8 U.S.C. § 1503(a)(2) "thus deprived the district court of subject matter jurisdiction to consider [his] claim." Id. (citing Ortega v. Holder, 592 F.3d 738, 743 (7th Cir. 2010) (interpreting 8 U.S.C.

§ 1503(a)(2) as providing that "an individual may not institute a § 1503(a) action if nationality is 'in issue,' that is, being disputed, in an ongoing removal proceeding")).

In the present case, Ramos Funez's citizenship is clearly "'in issue,' that is, being disputed, in an ongoing removal proceeding," Ortega, 592 F.3d at 743. Ramos Funez, however, asserts that he "never made an application for citizenship, nor was any denial of a claim to citizenship issued by the immigration court in any legal proceeding." Docket No. 13, p. 9. Ramos Funez also asserts in the Petition that he suffered a due process violation when "[t]he Immigration Judge . . . ordered Petitioner removed without any discussion on his citizenship or motion to terminate." Pet. ¶ 69. Further, in his Reply (Docket No. 13), Ramos Funez admits that he placed his citizenship "in issue" in his removal proceedings by asserting it in his Motion to Terminate. See id. at 4 ("The IJ never considered Petitioner's claim to derivative citizenship. What he did do was reject as untimely Petitioner's Motion to Terminate Proceedings, See Ex. X [Docket No. 13-1][7], wherein he asserted, for the first and only time in these proceedings, his claim to derivative citizenship."). Cf., e.g., Akhuemokhan v. Holder, No. 112-CV-1181 JFB, 2013 WL 6913170, at *2 & n.6 (E.D.N.Y.

_____

[7]

In the Motion to Terminate Proceedings, counsel for Ramos Funez argued, inter alia, that he qualifies for derivative citizenship under the CCA through his mother's naturalization and requested that the removal proceedings be terminated. See Docket No. 13-1, pp. 1-7. Counsel also argued that former INA § 321 is unconstitutional and should not be applied to Ramos Funez. See id.

-17-

Dec. 30, 2013) (finding "no question" that the citizenship issue "arose in connection with the removal proceeding against" the petitioner where DHS claimed that the petitioner was not a United States citizen, and petitioner asserted his citizenship as a defense to removal by twice moving to terminate the proceedings on the basis that he derived citizenship through his mother). Furthermore, the BIA has remanded the record to the IJ for reconsideration of all of Ramos Funez's claims except his challenge to the constitutionality of former INA § 321, which the IJ does not have jurisdiction to consider in the first instance. Ramos Funez's citizenship is clearly "in issue" in the pending removal proceedings.

For the foregoing reasons, the Court concludes that the jurisdictional limitation in 8 U.S.C. § 1503(a)(2) applies because Ramos Funez's citizenship is "in issue" in a pending removal proceeding. See, e.g., Lainez v. Osuna, No. 17 CIV. 2278 (HBP), 2018 WL 1274896, at *5 (S.D.N.Y. Mar. 8, 2018) (finding no jurisdiction where, "throughout his removal proceedings, plaintiff has asserted the defense that he was a United States citizen, clearly putting his status 'at issue' in the proceedings"). Ramos Funez has not borne his burden of establishing that this Court has subject matter jurisdiction over his claim that he is entitled to derivative citizenship under the applicable statutory scheme.

### 5. Failure to Exhaust Administrative Remedies

Even if neither of the jurisdiction-precluding clauses in 8 U.S.C. § 1503(a) were applicable here, the Court nevertheless finds that it does not have subject matter jurisdiction over Ramos Funez's citizenship claims because he has not established that he exhausted his administrative remedies by appealing USCIS's denial of his N-600 to the AAO. "Section 1503(a) expressly requires 'a final administrative denial' prior to the initiation of a declaratory judgment action." Pessoa v. Holder, No. 10 CIV. 1387 SHS, 2011 WL 2471206, at *4 (S.D.N.Y. June 21, 2011) (quoting 8 U.S.C. § 1503(a)). Upon rejection of an N-600 application for citizenship by the USCIS, an individual must appeal USCIS's decision to the AAO within thirty days if he intends to seek judicial review. "Only after a certificate of citizenship is denied following this administrative procedure does the district court have jurisdiction to determine citizenship." Barham v. United States, No. CR 96-543, 1999 WL 1092560, at *2 (E.D.N.Y. Nov. 30, 1999) (Weinstein, D.J.) (citing 8 U.S.C. § 1503(a)); see also Juste v. Sec'y United States Dep't of State, 697 F. App'x 130, 131 (3d Cir. 2017) (per curiam) (unpublished opn.) ("In light of Juste's failure to exhaust his administrative remedies [with USCIS and AAO], the District Court correctly concluded that it lacked jurisdiction to consider the case.").

Ramos Funez has not alleged that he appealed USCIS's denial of his N-600 application and therefore has failed to demonstrate the requisite exhaustion of administrative remedies. See Lainez, 2018 WL 1274896, at *4 (no subject matter jurisdiction over declaratory judgment action brought under 8 U.S.C. § 1503(a) where the "[p]laintiff does not allege—and there is no evidence in the record to suggest—that he ever appealed the USCIS's N-600 decision to the AAO"); Henriquez v. Ashcroft, 269 F. Supp.2d 106, 108 (E.D.N.Y. 2003) (alien failed to exhaust administrative remedies prior to seeking review by district court of Immigration and Naturalization Service's denial of his application for derivative citizenship; petitioner's letter to court indicating intent to appeal did not, in absence of adverse decision on that appeal from Administrative Appeals Unit, satisfy the exhaustion requirement).

### 6. Assuming 28 U.S.C. § 2241 Permits Jurisdiction in This Case, the Court Declines to Assume Jurisdiction

Ramos Funez asserts that Section 2241 provides an independent basis for this Court to exercise subject matter jurisdiction over his citizenship claim; the Government contends that he is incorrect, and that the only avenue available to a petitioner who unsuccessfully challenges his lack citizenship in a removal proceeding is a petition for review before the appropriate circuit court of appeals under 8 U.S.C. § 1252(b). See Docket No. 16, p. 4.

Section 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); <u>Zadvydas v. Davis</u>, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). Section 1252 of the INA, as amended by the REAL ID Act, Pub.L. No. 109-13, Div. B, 199 Stat. § 231 (May 11, 2005), provides that the exclusive method for obtaining judicial review of "a final order of removal" is through filing a petition for review in the court of appeals. <u>Flores-Torres v. Mukasey</u>, 548 F.3d 708, 712 n. 6 (9th Cir. 2008) (citing 8 U.S.C. § 1252(a)(2), § 1252(a)(5), § 1252(b)(9)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." <u>De Ping Wang v. Dep't of Homeland Sec.</u>, 484 F.3d 615, 615-16 (2d Cir. 2007).

Title 8 U.S.C., § 1252(b), explains that:

<u>With respect to review of an order of removal</u> . . . the following requirements apply:

. . . .

(5) Treatment of nationality claims

(A) Court determination if no issue of fact

If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

> (B) Transfer if issue of fact
>
> If the petitioner claims to be a national of
> the United States and the court of appeals
> finds that a genuine issue of material fact
> about the petitioner's nationality is
> presented, the court shall transfer the
> proceeding to the district court of the United
> States for the judicial district in which the
> petitioner resides for a new hearing on the
> nationality claim and a decision on that claim
> as if an action had been brought in the
> district court under section 2201 of Title 28.
>
> (C) Limitation on determination
> The petitioner may have such nationality claim
> decided only as provided in this paragraph.

8 U.S.C. § 1252(b) (emphasis added). Here, however, there is no final order of removal; rather, Ramos Funez's removal proceedings are ongoing. Ramos Funez cannot, as a practical matter, challenge a non-existent final order of removal, and 8 U.S.C. § 1252(a)(5) does not apply. To the extent that the Government asserts that this section bars Ramos Funez from proceeding under Section 2241 in district court, this argument is rejected.

In fact, there is authority from the Ninth and Third Circuits supporting Ramos Funez's position. See Flores-Torres, 548 F.3d at 712 n. 6 (9th Cir. 2008) (noting that 8 U.S.C. § 1252(b)(9) "does not provide a 'clear statement' foreclosing habeas review" under 28 U.S.C. § 2241 of a challenge to immigration detention based on pre-final-removal-order claim of citizenship) (citations omitted); Olopade v. Attorney Gen. of U.S., 565 F. App'x 71, 73-74 (3d Cir. 2014) (unpublished opn.) (citing Flores-Torres with approval). In

Flores-Torres, an immigrant argued, through a writ of habeas corpus under Section 2241, that his detention was unlawful because he was a United States citizen. 548 F.3d at 710. The government argued that the district court lacked jurisdiction to consider the petitioner's citizenship claim in light of section 8 U.S.C. § 1252(b)(5)(B), contending that this section set forth the exclusive means for considering citizenship claims in removal proceedings. See Flores-Torres, 548 F.3d at 710-11.

The Ninth Circuit rejected the government's contention, drawing a distinction between habeas petitions that challenge detention based on citizenship and those that challenge an alien's removal based on citizenship. See 548 F.3d at 711 ("Section 1252(b) by its terms, however, applies only to citizenship claims raised in connection with 'review of an order of removal.' 8 U.S.C. § 1252(b). . . . Torres's habeas petition. . . does not challenge any final order of removal, but challenges his detention prior to the issuance of any such order."). The Ninth Circuit explained that within this context, a petitioner's detention challenge based on a citizenship claim should be considered separate from a pending removal proceedings and may proceed without implicating 8 U.S.C. § 1252(b). Flores-Torres, 548 F.3d at 711-12. Accordingly, the Ninth Circuit concluded that the district court had jurisdiction under Section 2241 to consider the detainee's citizenship claim as a basis for challenging his detention. See id. at 713 ("We hold

that Torres does not have to wait until his removal proceedings are completed and a final removal order is issued before he can secure habeas review of his citizenship claim and of his contention that he may not be detained under the INA.").[8]

While <u>Flores-Torres</u> stands for the proposition that this Court may exercise jurisdiction pursuant to Section 2241 over the citizenship claim raised by Ramos Funez, it cannot be read as mandating that it do so. <u>See</u> <u>Pianka v. Rosa</u>, No. CV142179PHXDGCMHB, 2016 WL 7383333, at *2 (D. Ariz. Oct. 13, 2016) ("<u>Flores-Torres</u> does not require the Court to exercise jurisdiction over Petitioner's claim—the Court can exercise its discretion to decline jurisdiction and require prudential exhaustion before reaching the merits.") (citing, <u>inter alia</u>, <u>Puga v. Chertoff</u>, 488 F.3d 812, 815 (9th Cir. 2007)), <u>report and recommendation adopted</u>, No. CV-14-02179-PHX-DGC, 2016 WL 7372909 (D. Ariz. Dec. 20, 2016). "A habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention." <u>Michalski v. Decker</u>, 279 F. Supp.3d 487, 495 (S.D.N.Y. 2018) (citing <u>Monestime v. Reilly</u>, 704 F. Supp.2d 453, 456 (S.D.N.Y. 2010) (further citations

---

[8]  Several days after issuance of the Ninth Circuit's remand order, the BIA affirmed the IJ's decision ordering Flores-Torres removed, and the citizenship claim came before the Ninth Circuit in a petition for review. Finding material issues of fact as to whether the petitioner was a United States citizen, the Ninth Circuit transferred the issue of citizenship to the district court pursuant to 8 U.S.C. 1252(b)(5)(B) for a hearing and decision on the nationality claim. Section 1252(b)(5)(B) directs that a nationality claim should be decided as if it had been brought as a request for a declaratory judgment under 28 U.S.C. § 2201. Thus, while the district court ultimately decided the citizenship issue, it did not do so by exercising jurisdiction under Section 2241. <u>See</u> <u>Flores-Torres v. Holder</u>, 680 F. Supp.2d 1099, 1101 (N.D. Cal. 2009).

omitted)). While Section 2241 does not include a statutory exhaustion requirement, courts have generally required exhaustion as a "'prudential matter.'" Michalski, 279 F. Supp.3d at 495 (quoting Paz Nativi v. Shanahan, No. 16-CV-8496(JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) (citing Araujo-Cortes v. Shanahan, 35 F. Supp.3d 533, 538 (S.D.N.Y. 2014); Howell v. INS, 72 F.3d 288, 291 (2d Cir. 1995) ("Under the doctrine of exhaustion of administrative remedies, 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'") (quoting Guitard v. U.S. Sec'y of Navy, 967 F.2d 737, 740 (2d Cir. 1992))).

"[I]f an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies[:] . . . (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003), as amended (July 24, 2003) (quotation omitted).

With regard to Ramos Funez's claim that he is entitled to derivative citizenship as a matter of statute, the Court will

-25-

refrain from exercising jurisdiction over it and will require administrative exhaustion as a prudential matter. <u>Pianka v. Rosa</u>, 2016 WL 7383333, at *2 (citations omitted). Here, Ramos Funez's "citizenship claim is directly intertwined with his removal proceedings." <u>Id.</u> Recently, the BIA remanded the record to the IJ for further proceedings on all of Ramos Funez's claims save the constitutional challenge to former INA § 321. The record before this Court, in comparison, is undeveloped. Moreover, Ramos Funez has counsel in the removal proceedings, while he is unrepresented in this matter. <u>Id.</u> Furthermore, if the IJ rules adversely to Ramos Funez and the BIA affirms, he could then file a petition for review in the Second Circuit. Should that court find genuine issues of material fact about his nationality, it would then refer the case to the district court for a new hearing on the nationality claim. <u>See</u> 8 U.S.C. § 1252(b)(5)(B). Thus, Petitioner will not be deprived of due process if this Court declines to determine the merits of his statutory citizenship claim. <u>Pianka v. Rosa</u>, 2016 WL 7383333, at *3. The Court therefore will dismiss the statutory derivative citizenship claim as unexhausted; however, the dismissal will be without prejudice.

With regard to his claim that former INA § 321 is unconstitutional, the Court recognizes that the BIA has dismissed this claim because the IJ does not have authority to consider the constitutionality of immigration statutes. Indeed, under its

governing precedent, the BIA has no authority to consider constitutional arguments asserted by an immigrant. <u>See</u> <u>In Re Rodriguez-Carrillo</u>, 22 I. & N. Dec. 1031, 1035 (BIA 1999) ("[N]either the Immigration Judge nor this Board may rule on the constitutionality of the statutes that we administer.") (citation omitted); <u>see also</u> <u>Michalski</u>, 279 F. Supp.3d at 496 (citing <u>In Re: Omar Mejia Rojas</u>, 2014 WL 1120179, at *1 (DCBABR Jan. 31, 2014) (unpublished opn.)).

While the Second Circuit has recognized the presentation of a "substantial constitutional question," <u>Beharry</u>, 329 F.3d at 62, as one of the exceptions to the prudential exhaustion requirement, the Court finds that several factors counsel against reviewing the merits of the constitutional question at this time. A recent Second Circuit case which the Government argues requires rejection of Ramos Funez's constitutional is presently before the Supreme Court on a petition for a writ of <u>certiorari</u>. <u>See</u> <u>Gonzalez-Reyes v. Whitaker</u>, 757 F. App'x 21, 26 (2d Cir. 2018) (unpublished opn.), <u>pet. for cert. filed</u>, No. 18-9633 (U.S. May 16, 2019). Given that the law is in arguably in flux on this issue, the Court concludes that it is one that should be addressed by the Second Circuit in the first instance via a petition for review. The Court also notes that if Ramos Funez files a petition for review with the Circuit, he is more likely  to have representation. This in turn will allow a more robust development of the issues and arguments than is the

case here, where Ramos Funez is pro se. Therefore, the Court will dismiss the constitutional claim regarding former INA § 321 as unexhausted, but the dismissal will be without prejudice.

**B.   Claim Two: Denial of Due Process at the Merits Hearing**

Petitioner contends that he was denied due process at the merits hearing because the IJ denied his Motion to Terminate on the grounds that it was untimely and did not discuss his citizenship arguments or other grounds for termination of the removal proceedings. It appears that this claim has been rendered moot by developments in his immigration case following the filing of his Petition, namely, the decision of the BIA remanding the record to the IJ for further administrative proceedings. In particular, the BIA has directed the IJ to make findings of fact as to why the IJ found that the Motion to Terminate was untimely. See, e.g., Chapdelaine v. Comm'r, U.S. Parole Comm'n, No. 01 CIV.7364 FM, 2002 WL 31115545, at *5 (S.D.N.Y. Sept. 24, 2002) ("If an officer or agency performs the duty allegedly owed to the petitioner after a petition for a writ of mandamus has been filed, the petition becomes moot.") (citing Barrett v. United States, 105 F.3d 793, 794 (2d Cir. 1996); other citation omitted).

In the alternative, to the extent Ramos Funez is seeking to have this Court adjudicate the citizenship claim that the IJ allegedly failed to consider, the Court finds that it lacks subject matter jurisdiction to do so for the reasons stated previously.

Therefore, in the alternative, the second claim in the Petition is dismissed without prejudice.

## V.    Conclusion

For the foregoing reasons, the Government's Motion to Dismiss (Docket No. 9) is granted, and the Petition (Docket No. 1) is dismissed without prejudice.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     September 17, 2019
           Rochester, New York.